Next case is Keith Snyder v. Secretary of Veterans Affairs, 2015, 7012. Mr. Carpenter, good morning. Good morning, Your Honor. May it please the court that this case involves a question concerning eligibility to charge a fee and a fixed period during the course of a continuously prosecuted claim following successful representation before the court below in an appeal of an adverse board decision. In this record, it is clear that Mr. Snyder was continuously representing Mr. Brooke during the entirety of the appeal procedure as it continued below before the agency following his successful representation at court. There was an anomalous event which took place as a result of some confusion on the part of Mr. Brooke. You mean a termination? A termination? No, there was not a termination, Your Honor. There was, by the VA, a revocation of the VA's recognition of Mr. Snyder because the VFW, a service organization, sorry, Veterans of Foreign Wars, filing of a 22A, or a recognition form, and they were recognized by the VA, which automatically under VA procedures revoked Mr. Snyder's representation. During the course of that brief representation, they made a claim relative to the matter that was continuing before the agency within the one-year appeal period of the initial decision on the initial rating. As a consequence, that was part and parcel of the continuing case for Mr. Brooke. Under the correct interpretation of 5904, Mr. Brooke's representation by Mr. Snyder was uninterrupted. This goes not to whether or not the VA recognized him for a brief period of time or failed to recognize him, but whether or not he had a continuing relationship under the fee agreement that was properly entered into under 5904. Supposing that instead of coming back into the case, however you want to characterize what happened here, that Mr. Brooke had effectively fired Mr. Snyder in October or September, let's say, of 2002, and then a new lawyer had, let's say Mr. Carpenter, just to pick a name, had filed the increased benefits claim that was filed by the VFW in October. What would Mr. Snyder's interest in that claim and the benefits flowing from that claim be under those circumstances? Well, Your Honor, I think it's important to distinguish whether this is part of a separate claim or a new claim. Right, but that's important for our purposes as well, right? The question of whether that October 2002 as opposed to July 2002 was a separate claim, right? Well, that is not the correct analysis. That was the analysis that was made by the court below. The correct analysis is whether or not under 5904 this is the same case. And it is the same case because even under your hypothetical, even if a new attorney had come in, if, as in this case, Mr. Brooke went back to Mr. Snyder... Your Honor, let's assume he never goes back. Oh, if he never goes back... Never goes back. ...then that ends the representation. Well... But having... ...the second application, the one that's filed in October 2002 and all benefits that flow from that. Under the law... Does Mr. Snyder get any of that? Yes, Mr. Snyder gets all of that, Your Honor. He gets all of it, even though Mr. Carpenter did all the work? Well, even though Mr. Carpenter came in and filed... Suppose he not only filed, but he got all the evidence and he prosecuted it through the board and the Court of Appeals for the Veterans' Claims. Mr. Carpenter gets nothing out of that? He may have a cause of action back against Mr. Brooke for the work that he did, but under the fee agreement that was entered into under 5904, all past due benefits arising out of that case go to Mr. Snyder. But that is not the facts in this case, Your Honor. Would that also be true if, for example, in October, there had been... Supposing in July there was a PTSD claim, if there was. In October, there was a claim for injury to a left knee. Some other physical... But also service-related is the claim. Would that still be part of the same case that Mr. Snyder... Because it was within a year? No. Mr. Snyder initiated? No, because it wasn't part of the board's decision that was the predicate for the representation. Under the prior version of 5904, which was in place at the time that the fee agreement was entered into in this case, there had to be a first final board decision on a case. That case was limited to the psychiatric disability for post-traumatic stress disorder. And in that context, then no other cases or no other claims would be part of that representational agreement or the entitlement for Mr. Snyder to collect a fee. But if there had been a board decision, let's say, without representation by anyone back in years earlier on the knee, and then the filing was made, a new filing for the RO was made in October 2002 by Mr. Carpenter... That would be a new claim. That would... It would still be a new claim? Why would that be a new claim if the one that was filed in this case in October was not a new claim for increased benefits? Because... Just because it's the same subject matter of the PTSD? Well, because it's not the same subject matter. And I'm sorry, if you're saying that the new claim that was filed was for the physical conditions, that's what I'm saying would be a new claim. Right. If it related to the post-traumatic stress disorder, it would not be a new claim. It would not, even though it was for different benefits. In this case, an increased benefit as opposed to back compensation. Correct, Your Honor. Okay. And that's the important distinction here is that Mr. Brook's case was about his entitlement to pass due benefits for his award of compensation for post-traumatic stress disorder. There was no ending of that case that would have justified, even though they framed it as a claim for increase, there was no claim for increase because the rating had not become final. Because the rating had not become final, that continued as part of the appeal that Mr. Brook filed in 2003 that continued the case that had begun with the initial board denial that was successfully overturned by the Veterans Court and sent back for re-adjudication. And Mr. Brook was granted benefits as a result of that successful representation. And that case continued until he received the maximum benefits. And that case has been continuing through 2015. And there have been two subsequent awards after the initial award when Mr. Snyder was paid, this interim award of a relatively short period of time, and then two subsequent periods that go all the way back to 1996 for a total rating. All of those are part of the case that commenced with the first adverse court decision. So you disagree hypothetically in saying the VFW letter seeking a claim for increase is something different, separate, different claim than the claim originally filed in 1993? I think that would be at odds with this court's case law. Okay, but what if we go renegade and we just do that? So then what? What happens to your case here? Well, then I would request en banc review to reconcile the differences between the existing court cases. Okay, so basically your position predicated on whatever the VFW did in October 2002, that letter, it is somehow part and parcel of the claim that Snyder had been pursuing years prior. It was part of Mr. Brooks' continuing case, and case has been defined by this court in several cases that have interpreted the term case under 5904. It was part of that case. The action taken for what the VFW referred to as reopen for increase was not in fact either a reopening or a claim for increase. It was a challenge to whether or not the correct rating had been decided, and the proper action was the action that Mr. Snyder took, which was the filing of a notice of disagreement with the initial rating assignment. Right, but for at least a period of time, let's assume for the moment Mr. Snyder did not have a valid power of attorney to represent Mr. Brooks. That's correct, and in that window, he could not take action that would be recognized by the VA, but that has nothing to do with whether or not he had a valid and enforceable fee agreement under 5904. But what happens if a lawyer number two, say Mr. Carpenter, during that whole intervening period is reopening a claim, is submitting evidence, and is somehow convincing the VA to upgrade the rating from 30% to 100%. So now it becomes crystal clear that it's really the efforts of lawyer number two that has succeeded in convincing the VA to increase the rating. With all due respect, Your Honor, the efforts of Mr. Carpenter in the second instance are There is no new claim, no new action, because it's part of a continuously prosecuted claim. It is Mr. Brooks' ongoing case. And even if Mr. Carpenter did all of that work, that is a matter between he and Mr. Brooks, not a matter relative to 5904, which mandates, based upon the fee agreement between Mr. Brooks and Mr. Snyder, that the VA withhold from all past due benefits. The statute is crystal clear. Any and all past due benefits. Okay, so it might, then the result would be that Mr. Brooks would likely have to pay two lawyers for that. Potentially he would, under your scenario. I thought that the VA procedures didn't allow that, didn't allow any more than 20% to go to lawyers. Right? Isn't that, in other words, if Mr. Carpenter came in and said, well, you've paid 20% to Mr. Snyder, but you also owe me 20%. They wouldn't allow that, would they? Well, what would not be allowed would be a second withholding. Right, of 20%. That has nothing to do with whether or not Mr. Carpenter would be entitled, as a matter of quantum merit, to the work that he performed on behalf of Mr. Brooks. But where would the money come from? From Mr. Brooks. But that, I didn't, I thought that was the thing that the VA didn't allow, which is to narrow it, or on the basis of a second contract, or on any other basis, you can't, the veteran can't be in a position to have to pay more than 20% as an attorney fee. Isn't that right? That is not, there has been no judicial interpretation in that fashion, Your Honor. Oh, I was hoping. Is there any kind of regulatory provision? No, and there is no regulatory. No, Your Honor. Am I making this up and just imagining this 20% cap in the regulations or statute? I had the impression there was. Well, the 20% cap, Your Honor, relates only to the amount that will be withheld. And that the amount of the fee must be less than 20%. If it's 20% or less, then the amount of that fee will be withheld. But you can make a side deal with the veteran and say it's only 20% that's going to be withheld, but you're going to owe me another 20% because my contingent fee rate is 40%? Well, no, Your Honor. As a matter of fact, my practice, not your hypothetical, Mr. Carpenter, but this real Mr. Carpenter, my fee agreements are non-withholding fee agreements and my fee agreements are 30%. So the VA does not withhold my fee at all. All of the money goes to my client and then my client is obligated to pay me.  And by regulation, the VA has said that a fee agreement that calls for more than one-third of the amount of past due benefits is presumptively unreasonable. I would like to retain what's left of my rebuttal. Mr. Billingham. Good morning, Your Honor, and may it please the Court. Mr. Snyder suggests an unworkable standard. Mr. Carpenter has reiterated that today. Referring to terms such as continuing relationship, uninterrupted relationship, but relationship is nowhere in the rules. First of all, we do not deny that if Mr. Snyder were to establish service connection, for example, even using the VFW's civilian psychological assessment that won him an increased award in 2003, if he were to use that and establish that that assessment in 2003 and other medical records in 2003 should have applied logically relates back to 1993 and he gets an increase, say, to 100% in 1993, he owns that claim. All we're talking about here is a tiny slice of time. In October 2002, Veterans of Foreign Wars submitted a psychological assessment and dated, well, a little bit later than October 2002, dated February 2003. By May 2003, lightning quick by the standards of this case, the VA regional office recognized that Mr. Snyder's condition, Mr. Brooks' condition, rather, had increased severely. They also examined other records of the VA that were 2003, the 2003 time frame, and recognizing that he then had suffered an increase, they determined that between October 2002 and the VFW filed that claim on his behalf, in May of 2003 when they judged him to be 100% within that time frame, he received past due benefits. These are past due benefits measured by the 100% the Veterans Administration awarded in 2003 minus the 30% he had already been getting times the approximately nine months it took for him to get that award. That nine months times that delta is what we're fighting about here. We're not saying there's a de minimis rule in play. We're simply saying that is the bright line between the very small area we're carving out here as being a separate claim that was won on the account or by the good efforts of the VFW. Therefore, for that period, Mr. Brooks is entitled to keep all of the money. So Mr. Carpenter says that that's simply a separate, it's simply part of the same case for purposes of the fee statute as the July 2002 claim. What is it that tells us that he's wrong in saying it's the same case? Well, this case, this court rather, the Court of Veterans Claims has long associated the word case with claim, and that makes sense. Lawyers are recognized for their work on claims. They're paid for their work on board decisions involving issues. But this court has never suggested that a case means something other than a claim. In this court's colloquy with Mr. Carpenter, the premise seemed to be, the premise was, that this is a different claim. Mr. Carpenter has not provided any reason for suggesting this was a different claim. This court has explained in Jackson and other cases that what you do in parsing out whether a case belongs, whether a claim belongs to one case or another, you examine the benefits sought. In this case, it was a claim for increased benefits, and you examine the essential elements. I think this court called them the necessary elements. In the Cameron case and in the case we're reviewing today, called them essential elements. So, for example, in the Carpenter case, Mr. Carpenter's own case, the court said that it was wrong for the Veterans Administration to parse out or separate out a dispute over an effective date, where what was at stake was a disability claim. And the court explained that a disability claim has actually five necessary elements, but the two key ones were an effective date and a disability. And so the cue claim at issue in that case was not a new claim because it concerned a very disability claim that had been issued all along, which included an effective date and a rating. In this case, the effective date and the rating is unique to the period 2003, late 2002, early 2003, and forward. And that is because it is a claim for increased benefits, i.e. his condition has gotten worse, as opposed to a claim for back benefits, which a cue claim would be, and a new material evidence claim would be, or assertion would be. The statute at 1001 recognizes three kinds of claims, an original claim, which this clearly is not, a claim for increased benefits, and a claim for reopening after final adjudication, which the case is also not. And for example, 5001 says as much. 5103, 38 U.S.C. 5103, which requires the Veterans Administration to give notice, says the notice must be given with respect to and taking into account the type of claim at issue. So sort of the atomic particles of all cases are claims, and underneath those issues and underneath those evidence. What about the Bond v. Shinseki case, which suggests that any time there is new material evidence and there is multiple claims pending, then the VA needs to consider how that new material evidence relates to all pending claims. Right. There the court was considering 38 CFR 3.156, the new material evidence standard, which says when new evidence comes in, it must be associated with a pending claim. So as the court said here, it was associated with a pending claim, and that was the claim for the 2003 increase to 100%. And there is nothing that prevents it, and the board has considered it, in connection with the other pending claim as well. The one starting in 1993? 1993, right. And so Mr. Snyder could very well have taken that 2003 evidence, and he has. And by the filing of his June 2003 Notice of Disagreement said, well, I'll take the 100%, but I think it ought to be effective all the way back to 1993. So it has been effectively associated with that case. The Vine case simply stands for the proposition that even though a new material evidence may give rise to a new claim, the board must at least consider it with respect to any pending claim. And here, based on its very terms, that is, it was based on a 2003 examination of the veteran per force. It's not material to what his condition was in 1993. And that's especially true where he was examined by the VA in 2002 and found to have only mild impairments. Let's assume for a moment there was no October 2002 opening of a new claim, and then in April of 2003 there was that examination assessment that then led to the May 2003 award of 100% rating. Then under those circumstances, that would relate back to the 1993 claim, right? It would be part of the 1993 claim. The VA would have to consider whether it does relate to the VA claim, and it has considered that and is not found to this day, to my knowledge, that 2003 examination demonstrates anything with respect to the veteran's condition back in 1993. So simply associating it and considering it with the claim does not necessarily make it new material or it is positive. The likely effective date of that rating would have been the April examination date, right? The April 2003 examination date. Right. In fact, in a November 27, 2012 decision, the Board said that by its analysis, it was I think February 28, 2003 really was the effective date. But recognizing that the RO had granted an earlier service connection date, or effective date rather, to October 2002 because that's when the VFW submitted the document, the Board recognized that it would acknowledge October 2002. Was that the right time to make the effective date, the date of the VFW's letter, rather than the date of the medical assessment? I think that was sort of a benefited out thing. I think the Board properly held that what matters with respect to effective date is what the evidence suggests, and they found that the evidence suggested that it was in the February 2003 timeframe that this onset, if you actually read the evidence, it's not precise, but that's getting into sort of medical fact finding. But then the Board simply allowed that because the Veterans Administration or the regional office had already granted a connection as of the October 2002 date, which is artificial to be sure, they sort of went along with that. But in terms of medical facts, it appears that it was found to be 2003, which is when its condition worsened. Is it your view, the government's view, that when it comes to attorneys being able to collect fees for services in these types of VA benefits cases, that there can be circumstances where two different lawyers can collect the same benefit, maybe because an argument could be made that each of the two lawyers at a certain point in time somehow contributed and the flow from their efforts led to the benefits decision? What I understand, and this is not part of this case, I think the answer to that question may suggest that the policy that Mr. Carpenter suggests here is a horrible policy and it's unworkable because of precisely that problem. But my understanding is that it is, well I know for sure, that the Veterans Administration has control over the administration of fees and they must be reasonable, as Mr. Carpenter alluded to, and therefore if for whatever reason the Veterans Administration were determined there was an unreasonable fee afoot, they certainly would control that. There is this quantum Merriwick, I've come to learn about this week, procedure, which Mr. Carpenter speaks about much more eloquently for sure and much more knowledgably than I, whereby the Veterans Administration attempts to discern who is entitled to the past due benefit and could notify the veteran, for example, that we determine or we suggest that or it appears that your lawyer is eligible for 20% of the past due benefit and if there was a question about how it should be parsed out, for example the veteran says he did no work, I did all the work, he simply signed an agreement and after that he did nothing or I had another lawyer that did the work or whatever. Presumably there can be this quantum Merriwick dividing up of the 20% as it were, but that question is not presented in this case. But the 20% is not a hard cap then? I take Mr. Carpenter's word that it's not, he is correct, I know this to be sure. I had always assumed, and I may well be wrong in this, but I had always assumed or understood that the reason that the Veterans Administration has this 20% maximum on the fee agreements that it will administer in effect by making the payment, that that was intended to say 20% is all that we're going to allow attorneys to charge the veterans. You can't have 20% from us and another 30% from the veteran based on a side deal. But you're not taking issue with Mr. Carpenter's representation that at least up to 33 and a third percent, that's permissible. I'm off the record here, Your Honor, and so the agency counsel is suggesting to me this isn't exactly right. Mr. Carpenter suggests that 30% has been deemed to be not unreasonable. It is true, though, that what we're talking about here is the Veterans Administration's direct payment of past due benefits pursuant to fee agreements which will be deemed reasonable if they are for no more than 20%. So certainly you can get 20% directly from the Veterans Administration and as I understand, there is this quantum merriment procedure whereby the Veterans Administration perhaps could carve up to 20%. In any event, we don't have the issue of more than 20%, right? Right. Thankfully, that's not the further complication to this case, Your Honor. So our bottom line here is that cases are associated with claims. It does not appear to be an issue and I won't address that further. What we do object to is Mr. Carpenter's or Mr. Snyder's brief statement of what he believes is a proper standard and that is, quoting from page 5 of his reply, he argues that because all of his services were performed after the Board's January 1998 adverse decision, that success established entitlement to a fee for all past due benefits regardless of whether he continues his representation. That is overly broad and it would be horrible and unworkable policy. If what Mr. Carpenter literally means is post hoc ergo proctor hoc because this happened after my work and must have been as a result of my work, that's not logic and that's not the law. If, however, he's saying if he earns a success at the Court of Appeals, and he did here in 1999, and if that success is sufficient for a subsequent past due benefit claim, then he's entitled to that past due benefit claim, setting aside the quantum area of discussion we've had, we agree with him. But he goes farther. He says even if my success before the Court of Veterans Claims in 1999 was not sufficient for the 2010 claim, I still lay claim to those benefits subsequently earned and here it was not sufficient because all he established by his success in 1999 was first that there was service connection back to 1993 and second that there was a 30% service connection back to 1993. He did not establish and he could not have established what the veterans condition would be in 2003 because that was years in the future. Well, actually his decision was in 2002. It was slightly in the future and reminds, of course, of the case in Shinseki where the veterans condition, where the veterans attorney met 5904 conditions, was decided and ultimately concerned condition in 2001. Shortly thereafter, she went into a hospital and there was a new condition, new evidence, hospitalization records, which could not have been known to the board in 2001. So even that slight difference in time was enough for the court to conclude where the records could simply not be known to the board in their initial decision. Which case was that? This was Jackson. Now, in a case that's close in many respects, as Chen mentioned, the Bond case, there was a remand in the situation that's somewhat akin to this. There was a claim for increased benefits while there was another claim pending and the claim for increased benefits was made within a year. The court sent that back for a determination as to whether there was new and material evidence that was part of the presentation that was made in support of the claim for increased benefits. Now, your argument, if I understand your response to Judge Chen earlier, and I want to make sure this is right, is that in effect that remand determination that the Bond court called for has already been done in this case, in effect, by the board? Is that your position? Yes, I don't think there's ever been any suggestion that the evidence submitted by the VFW has not been considered or never been considered in connection with service connection for earlier dates. Well, but the question that the court was asking was, does it constitute, among other things, new and material evidence in support of the July 2002 claim? And are you saying that no, it's simply not pertinent to that claim? Or are you saying, well, there's no suggestion that they didn't consider it new and material evidence? I don't know that there has ever been a decision that discreetly considered whether that evidence was new and material evidence, but it certainly was part of the very lengthy November 27, 2012, board decision in which all the evidence was discussed. New and material evidence is defined in 3.156. Material evidence means existing evidence that by itself, when considered with previous evidence, relates to an unestablished fact necessary to substantiate the claim. That 2003 evidence, the 2003 civilian psychological assessment, was not necessary to the establishment of the 1993 claim or 100% with respect to that claim. And the definition goes on to say, this evidence must raise a reasonable possibility of substantiating that claim. There's no reasonable possibility that the 2003 investigation of veterans' health in 2003 related whatsoever to 1993. Thank you, Mr. Gillingham. Thank you very much, Your Honor. Mr. Hopper has a couple of minutes to rebut. Thank you, Your Honor. With all due respect to my colleague, he is wrong. The VA is wrong here because the VA overlooks two critical factors. One, the claim stream. The claim stream of this case is uninterrupted. It involves the appeal of the initial rating assigned after the grant. That's what's in play in this case. And the reason that that claim stream is uninterrupted is one of finality, which goes directly to your point, Your Honor, about Bond. There is no finality here in Mr. Brook's case. It never came to an end. That is why reopening was not appropriate, and that's why a claim for increase was not appropriate, even though there was evidence from the medical record that justified a higher rating. And the reason that it's part of the claim stream is when the board granted the benefit and sent it back for an initial rating, the VA only assigned a 30% rating. At issue then in Mr. Brook's claim stream was the appropriate rating from 1993 in excess of 30%. The VA creates or attempts to subdivide the case of Mr. Brook into one of effective date and rating. While those are issues in the rating more than 30%, those are not new claims. They cannot be subdivided. Mr. Brook's case cannot be subdivided. Would you say then that whether you want to say it's claim or case, you can answer with respect to both if it's a different answer, but would you say that where you have a claim for back benefits based on an argument that there was actually a higher level of disability originally, say in this case 1993, and also a claim for increased benefits where the argument is I've gotten worse as of October 2002, and therefore regardless of what happened between 1993 and 2002, now I'm 100%. When is the best? You would say, I take it, that both of those are the same claim or at least the same case. They are certainly the same case, Your Honor, and they cannot be a new claim until there is finality on the initial rating assigned from 1993 to whatever the ultimate presence is. What's your best case? What's your best authority from this court for the proposition that where you have an increased benefits claim and a back benefits claim, as long as the former was filed within one year of the filing of the law? The Bond case and the most recent interpretation of Bond by this court in Barad. Both of those cases involve what happens during the course of the prosecution. I'm sorry, what was that last case? B-E-R-A-U-D, I believe is how it's spelled, Barad. All right. And it's, I think, a 2015 case, but it may be a late 2014 case. And it relies and clarifies this court's holding in Bond. No, they were not cited by either party, I do not believe, in this case, Your Honor. And that's because we are not dealing with something that happens during the course of the proceeding. What we're dealing with here is the entitlement to compensation under 5904 for an award of past due benefits, which takes place during the claim stream. There is no finality to Mr. Brooks' claim stream. And it may, in fact, still be open. The April 2015 most recent decision granted a total rating back to 1996. So there's the window between 1993 and 1996, where the rating currently is merely 50%. I do not know what the status is of that part of it, but I do know that Mr. Sider, on behalf of Mr. Brooks, has been successful as late as April of 2015 in getting Mr. Brooks an award back to 1996 for a total rating. Thank you. Thank you, Mr. Carpenter. We'll take the case under review.